**Benjamin W. BOLEY, Petitioner,**

v.

**DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD, Respondent,**

**Embassy Corporation, Intervenor.**

**No. 6294.**

District of Columbia Court of Appeals.

Argued May 16, 1972.

Decided June 30, 1972.

Benjamin W. Boley, Washington, D. C., pro se.

Leo N. Gorman, Asst. Corp. Counsel, adopting the brief of intervenor. C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, also entered appearances for respondent.

Robert D. Roadman, Washington, D. C., for intervenor.

Before FICKLING, GALLAGHER and REILLY, Associate Judges.

FICKLING, Associate Judge:

This is a petition for review of an order of the District of Columbia Alcholic Bev-

11. See M. A. P. v. Ryan, D.C.App., 285 A.2d 310 (1971).

erage Control Board (Board) granting the application of Embassy Corporation for reissuance of a Retailer's Class "C" liquor license for a restaurant and lounge at 2505 Wisconsin Avenue, N.W.—the Wellington Apartment Hotel. For reasons discussed below we vacate the order of the Board and direct the Board to issue an order denying the Embassy's application for reissuance of the license.

The premises in question have been the subject of protracted litigation before both the Zoning Commission and the courts. We will not fully review that history here. Suffice it to say that the following facts are undisputed. (1) On May 25, 1970, former Chief Judge Curran of the United States District Court issued an order "that R–1–B zoning be restored to the subject site pending a decision by the Zoning Commission following a new public hearing [on the application to rezone] upon this remand," which was affirmed on appeal.[1]

(2) United States District Court Judge Parker granted Embassy interlocutory relief pending the rezoning hearing by ordering the District of Columbia to issue a "Temporary Certificate of Occupancy" for the premises. (3) The District, in compliance with Judge Parker's order, issued a certificate of occupancy incorrectly marked "Zone R–5–C." (4) In January 1972, armed with the certificate of occupancy, Embassy obtained a liquor license for the premises. (5) When the Board considered Embassy's application for reissuance of the license, it was aware of Chief Judge Curran's order and it was also aware that the new public hearing on the rezoning application had not been held.

A review of the Board's Findings of Fact and Conclusion of Law and of the transcript of the reissuance hearing reveals that the Board felt bound by the certificate of occupancy which erroneously stated that the property was zoned R–5–C, rather than by Chief Judge Curran's order reinstating R–1–B zoning pending a new hearing. At one point in the hearing, a member of the Board stated " . . . there is available the Certificate of Occupancy. On the basis of that, I don't think the Board can afford to go behind it." This position is erroneous.

The Board's regulations state that "[N]o license shall be issued to any person unless he is the holder of a certificate of occupancy *issued under the authority of the Zoning Act. . . . "* 3 DCRR § 2.1(a) (emphasis added). There is no dispute that, at the time of the hearing on the application for reissuance, the property was zoned R–1–B per Chief Judge Curran's order. Judge Parker's order for a temporary certificate of occupancy was granted in an equity action; it did not change the zoning of the property; it merely permitted Embassy to occupy the building in order to save the owners from financial catastrophe. There was no reason for the Board to ignore Chief Judge Curran's order restoring the zoning to R–1–B and to rely solely on the certificate of occupancy issued per Judge Parker's order under his equity powers, not "under the authority of the Zoning Act."[2] The Board must have known it contained an erroneous entry of R–5–C zoning. Furthermore, zoning changes do not take place by way of a certificate of occupancy.

---

1. *See* Allen v. Zoning Commission, 146 U.S.App.D.C. 24, 449 F.2d 1100 (1971).

2. Embassy argues that because the United States District Court denied petitioner's request to amend the order requiring the issuance of a temporary certificate of occupancy so as to specifically prohibit the operation of any facility requiring a liquor license, this court cannot vacate the Board's order without reversing *"sub silento* [sic] the Orders of the United States District Court denying [petitioner's] motion for addition of conditions . . . . " [Brief for Intervenor at 11]. We do not agree because the District Court's order denying requested additions to its mandamus order is obviously not a ruling on whether in fact a license should be granted. That order means nothing more than, at that stage in the proceedings, the District Court refused to direct Embassy not to apply for a license.

The Board acknowledged that no license could be issued for property zoned R–1–B (one-family detached dwelling). Therefore, since the reissuance of the license was not in accordance with the Board's own regulations, the order must be vacated. Vitarelli v. Seaton, 359 U.S. 535, 545, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Hammond v. Lenfest, 398 F.2d 705, 715 (2d Cir. 1968); Sangamon Valley Television Corp. v. United States, 106 U.S.App.D.C. 30, 33, 269 F.2d 221, 224 (1959).[3]

In view of our disposition of this case, we find it unnecessary to reach the other issues raised by petitioner.

Reversed and remanded with instructions to deny Embassy's application for reissuance of the license.

---

3. We also note questionable procedural irregularities in the hearing, e. g., failure to permit cross-examination of applicant, and failure of applicant on the burden of proof because it offered no testimony on disputed issues. D.C.Code 1967, § 1– 1509 (Supp. V, 1972). We are confident that the Board will immediately correct these deficiencies and will amend its published regulations to conform to all standards of the District of Columbia Administrative Procedure Act.